No. 2--07--0176        Filed:  11-5-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LARRY L. VOGA, as Special Representative of LeRoy Voga, Deceased, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Nos. 98--D--241 |
| | ) | 99--L--32 |
| LYLE VOGA, | ) ) | |
| Defendant | ) ) | Honorable James Donnelly, |
| (Teresa Voga, Intervenor-Appellee). | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

LeRoy Voga sued Lyle Voga, his son, to recover debts.  After the trial court awarded LeRoy a judgment, intervenor, Teresa Voga, petitioned to quiet title to real property that she and Lyle had held in joint tenancy but to which she received full title under a judgment dissolving her marriage to Lyle.  Teresa sought to prevent LeRoy from levying on the property.  After various proceedings, the trial court granted Teresa summary judgment (735 ILCS 5/2--1005(c) (West 2006)).  Shortly afterward, LeRoy died, but his attorney moved to vacate the summary judgment.  The trial court appointed Larry Voga, LeRoy's other son, as the special representative of LeRoy's estate for this litigation.  The court then denied the motion to vacate.  Larry now appeals.  We affirm.

On April 29, 1999, in case No. 99--L--32, LeRoy filed a complaint alleging that Lyle had failed to pay three promissory notes. The trial court found Lyle in default. On July 1, 1999, it awarded LeRoy $238,293.86 and entered a memorandum of judgment in his favor.

On December 17, 2001, Teresa petitioned to intervene (see 735 ILCS 5/2--408 (West 2000)), alleging as follows. On June 26, 2000, in In re Marriage of Voga, case No. 98--D--241, the trial court dissolved Teresa's marriage to Lyle and awarded her full title to the former marital home in Sandwich. Thirty months after LeRoy received the default against Lyle, he mailed Teresa a copy of an order requiring the sheriff to "levy upon all of the right, title and interest of [Lyle] in and to all of the lands, hereditaments and tenements of [Lyle]," including the Sandwich property. Teresa contended that LeRoy could not levy on the Sandwich property because it was now solely hers.

Also on December 17, 2001, Teresa filed a "Petition to Quash Levy" and a "Petition to Quiet Title." These petitions alleged that LeRoy did nothing to enforce the 1999 judgment until the sheriff received the order described above almost six months after the dissolution judgment was entered. The two petitions asked the court to invalidate the memorandum of judgment, declare Teresa the sole owner of the Sandwich property, and enjoin LeRoy from further action against either Teresa or the property to "collect on the default judgment."

LeRoy responded that, when he filed his memorandum of judgment, the Sandwich property was jointly owned by Lyle and Teresa and was subject to a levy to satisfy his judgment against Lyle. LeRoy moved for a substitution of judge (see 735 ILCS 5/2--1001(a)(2) (West 2002)). The trial court denied the motion and later granted Teresa summary judgment on her petitions. LeRoy appealed. We reversed and remanded, holding that LeRoy had the right to a new judge and that all

orders entered after his motion for a new judge was denied were void. Voga v. Voga, No. 2--03--1205, slip op. at 6-7 (2004) (unpublished order under Supreme Court Rule 23).

On remand, Teresa again moved for summary judgment. In response, LeRoy argued that his lien on the Sandwich property persisted even after the trial court awarded Teresa the property. On Teresa's motion, the trial court consolidated case Nos. 98--D--241 and 99--L--32.

Teresa then filed a second motion for summary judgment. The motion argued that, under section 2--1901 of the Code of Civil Procedure (the lis pendens statute) (735 ILCS 5/2--1901 (West 1998)), LeRoy was a subsequent purchaser of the Sandwich property, because (1) he did not obtain his judgment lien until after case No. 98--D--241 had commenced and Teresa had filed a lis pendens; and (2) he had both actual and constructive notice of the action.

On September 13, 2006, the trial court heard arguments on the motion. The court noted without disagreement that the lis pendens was filed in the marriage case in June 1999 and that there was no dispute that, before July 1, 1999, LeRoy had had actual and constructive notice of Teresa's claim to the Sandwich property. Thus, the court concluded, the dissolution judgment eliminated Lyle's interest in the Sandwich property, and LeRoy could not levy against the property. That day, the trial court granted summary judgment to Teresa.

On September 26, 2006, LeRoy died. On October 13, 2006, before the trial court appointed Larry to represent LeRoy's estate in this case, LeRoy's attorney moved to vacate the grant of summary judgment. On January 9, 2007, the trial court appointed Larry as the special representative of LeRoy's estate. On January 10, 2007, after hearing arguments, the court declined to vacate the judgment for Teresa. On February 9, 2007, Larry filed a notice of appeal.

Teresa maintains that we lack jurisdiction over this appeal because it is untimely. She argues that, although the notice of appeal was filed within 30 days after the trial court denied the motion to vacate the judgment, the motion itself was a nullity and did not extend the time in which to appeal. See 210 Ill. 2d R. 303(a)(1) (notice of appeal must be filed within 30 days after entry of judgment appealed from, or, if a timely postjudgment motion is filed, within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against the judgment). Earlier, we denied Teresa's motion to dismiss, but we may reconsider our ruling at any time before disposing of the appeal. See In re Marriage of Waddick, 373 Ill. App. 3d 703, 705 (2007).

Teresa observes that, when LeRoy's counsel filed the motion to vacate, LeRoy had died, and nobody had been appointed to represent his estate in this case. Thus, between September 27, 2006, and February 9, 2006, there was no plaintiff. As a result, Teresa notes, LeRoy's counsel had no authority to file the motion to vacate the summary judgment. See Clay v. Huntley, 338 Ill. App. 3d 68, 76 (2003) (attorney-client relationship terminates upon death of client, and attorney's authority to proceed thereafter must come from decedent's personal representative). Also, the trial court's jurisdiction was suspended until it appointed a special representative of LeRoy's estate. See Washington v. Caseyville Health Care Ass'n, 284 Ill. App. 3d 97, 100 (1996). Teresa argues that, because the motion to vacate the judgment was unauthorized, it did not extend the time in which to appeal, making the notice of appeal untimely. We disagree. We hold that LeRoy's death tolled the time in which to file either a postjudgment motion or an appeal. We rely partly on case law and partly on the policy embodied in section 2--1008(b) of the Civil Practice Law (735 ILCS 5/2--1008(b) (West 2006)), which governs the substitution of a proper party for one who has died.

LeRoy's death on September 26, 2006, suspended the trial court's jurisdiction over this case until the court appointed a proper successor plaintiff. See Washington, 284 Ill. App. 3d at 100. Had no motion to substitute been filed within 90 days of LeRoy's death, the trial court would have had the discretion--but not the obligation--to dismiss the action. See 735 ILCS 5/2--1008(b)(2) (West 2006). Thus, the trial court's jurisdiction was suspended as of September 26, 2006, but LeRoy's estate had no obligation to move to substitute a proper party until December 26, 2006.[1]

Were we to accept Teresa's reasoning, we would have to hold that, after LeRoy died, the summary judgment in Teresa's favor could have been appealed (or challenged by a motion) only had a personal representative been appointed and filed the appeal (or motion) by October 13, 2006 (30 days after the entry of judgment). Under the circumstances here, that would mean that LeRoy's estate had 17 days to move to substitute a personal representative for LeRoy, obtain a grant of the motion, and file the needed postjudgment motion or appeal. That itself appears unduly stringent, but, in principle, the adoption of Teresa's reasoning could have led to even worse consequences. For instance, had LeRoy died on October 12, 2006, his estate would have had only one day in which to move to substitute a new plaintiff, have the motion granted, and file the postjudgment motion or appeal. That result would be harsh to the point of absurdity. Moreover, it would flout section 2--1008(b)'s policy of allowing the estate of a plaintiff who has died 90 days (or more, at the trial court's discretion) in which to substitute a new plaintiff without fear of having the case dismissed.

---

[1]The ninetieth day after LeRoy's death was December 25, 2006, a court holiday, and thus the motion was due December 26, 2006. See 5 ILCS 70/1.11 (West 2006); Rubloff CB Machesney, LLC, v. World Novelties, Inc., 363 Ill. App. 3d 558, 561 (2006).

We have found no case law applying either Supreme Court Rule 303(a)(1) or section 2--1203(a) of the Code of Civil Procedure (735 ILCS 5/2--1203(a) (West 2006)), which allows a party 30 days in which to file a postjudgment motion in a nonjury case, to circumstances comparable to those here. However, it is logical that the suspension of the trial court's jurisdiction between the date of a plaintiff's death and the substitution of a new plaintiff should toll the period for filing an appeal or a postjudgment motion. If the trial court temporarily lacks jurisdiction, it makes little sense to require the plaintiff's would-be successors to invoke its authority--other than by moving under section 2--1008(b) to substitute a new plaintiff so that the case can again proceed. Thus, even aside from the considerations raised by section 2--1008(b)'s lengthy grace period, our analysis of whether this appeal is timely would have to discount the period between LeRoy's death and Larry's appointment as his personal representative.

Larry was substituted as plaintiff on January 9, 2007, and he participated in the January 10, 2007, hearing, asking the trial court to vacate the grant of summary judgment to Teresa. Thus, by any reasonable calculation, on January 10, 2007, there was a timely oral postjudgment motion before the trial court. The court denied the motion, and Larry appealed within 30 days of the denial. Therefore, we have jurisdiction to consider the merits of Larry's appeal.

We turn to the merits. Larry contends that the trial court erred in holding that the lis pendens statute denied LeRoy (and now LeRoy's estate) the ability to levy against the Sandwich property to satisfy the judgment against Lyle. Larry maintains that the lien is property and that the trial court had no authority to divest LeRoy of that property. We disagree.

We note first that Teresa is correct that the July 1, 1999, memorandum of judgment gave LeRoy's estate a lien not against the Sandwich property itself but, rather, against Lyle's interest in the

Sandwich property, i.e., his joint tenancy. With that clarification, we explain why the trial court properly granted summary judgment to Teresa.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2006); Petrovich v. Share Health Plan of Illinois, Inc., 188 Ill. 2d 17, 30-31 (1999). Our review is de novo. Vega v. Northeast Illinois Regional Commuter R.R. Corp., 371 Ill. App. 3d 572, 577 (2007).

In pertinent part, the lis pendens statute reads:

"Except as otherwise provided ***, every condemnation proceeding, proceeding to sell real estate of [a] decedent to pay debts, or other action seeking equitable relief, affecting or involving real property shall, from the time of the filing in the office of the recorder in the county where the real estate is located, of a notice signed by any party to the action or his attorney of record or attorney in fact, on his or her behalf, setting forth the title of the action, the parties to it, the court where it was brought and a description of the real estate, be constructive notice to every person subsequently acquiring an interest in or a lien on the property affected thereby, and every such person and every person acquiring an interest or lien as above stated, not in possession of the property and whose interest or lien is not shown of record at the time of filing such notice, shall, for the purposes of this Section, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he or she were a party thereto." 735 ILCS 5/2--1901 (West 1998).

A dissolution-of-marriage proceeding is an action "seeking equitable relief, affecting or involving real property" (735 ILCS 5/2--1901 (West 1998)) and thus within the lis pendens statute. First Midwest v. Pogge, 293 Ill. App. 3d 359, 364 (1997). Under the statute, one who obtains an

interest in property during the pendency of a suit affecting it, and who has constructive notice of the suit, is bound by the result of that litigation as if he had been a party from the outset. Pogge, 293 Ill. App. 3d at 363. Further, persons with actual notice of the suit are subject to the common-law doctrine of lis pendens even if there has been no compliance with the lis pendens statute. Pogge, 293 Ill. App. 3d at 363-64.

At the hearing on Teresa's motion for summary judgment, the trial court observed that there was no dispute that (1) both the dissolution-of-marriage action and Teresa's lis pendens had been duly filed before July 1, 1999, when LeRoy obtained his judgment lien; and (2) LeRoy had both constructive and actual notice of the dissolution-of-marriage action. Larry did not then contest this observation, and he does not do so now. Therefore, as a matter of law, LeRoy was a subsequent purchaser who, when he obtained his memorandum of judgment on July 1, 1999, was already bound by whatever the trial court decided in the dissolution case. The judgment in that case extinguished Lyle's interest in the Sandwich property. Once Lyle's interest in the property ceased to exist, any lien that LeRoy had on that interest could not survive. With no more interest, there was nothing to which the lien could attach. See Harms v. Sprague, 105 Ill. 2d 215, 224-25 (1984). Therefore, the trial court rightly concluded that Teresa was entitled to have the levy on the Sandwich property quashed, and its grant of summary judgment in her favor must stand.

The judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

GROMETER, P.J., and CALLUM, J., concur.